**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE:

      DELPHI CORPORATION, *et al.*,

               Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

               Appellant,

      - against -                  08 Civ. 3753 (NRB) (AJP)

DELPHI CORPORATION, *et al.*,

               Appellees.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BRIEF FOR APPELLANT**

                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Telephone:  (212) 637-1945
                              Facsimile:  (212) 637-2750
                              E-mail:  matthew.schwartz@usdoj.gov

MATTHEW L. SCHWARTZ
JOSEPH N. CORDARO
Assistant United States Attorneys
     - Of Counsel -

## TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.      The EEOC's Investigation of Delphi's Unlawful Sick Leave Policy. . . . . . . . . . 2

      B.      The Late Claim Motion and Bankruptcy Court's Decicion. . . . . . . . . . . . . . . . . 5

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT I       THE EEOC'S CLAIM SHOULD HAVE BEEN ACCEPTED
                FOR FILING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.      THE CLAIMS PROCESS, THE BAR DATE ORDER, AND
            THE LAW OF EXCUSABLE NEGLECT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.      THE GOVERNMENT WAS PROHIBITED FROM FILING ITS
            CLAIM UNTIL THE COMMISSIONERS OF THE EEOC
            AUTHORIZED SUIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           1.    "Claims" Under the Bankruptcy Code. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           2.    The EEOC is Obligated to Keep Charges of Discrimination
                Strictly Confidential Until It Completes Its Administrative Process. . . . . 10

                a.      The EEOC's Administrative Process for Investigating
                     Complaints of Discrimination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                b.      The Confidentiality Requirements. . . . . . . . . . . . . . . . . . . . . . . . . 11

           3.    Because It is Required to Keep Allegations of Discrimination
                 Confidential, the EEOC is not Required to File a Proof of Claim
                Until the EEOC or Charging Party Files an Action . . . . . . . . . . . . . . . . 12

    C.     UNDER THE EXCUSABLE NEGLECT STANDARD, THE EEOC
          CLAIM SHOULD HAVE BEEN ACCEPTED.. . . . . . . . . . . . . . . . . . . . . . . . . . 14

          1.     There Was No Prejudice From the EEOC Claim. . . . . . . . . . . . . . . . . . 15

          2.     The Length of Delay Was Not Excessive. . . . . . . . . . . . . . . . . . . . . . . 18

          3.     The EEOC Had Good Reason to Delay.. . . . . . . . . . . . . . . . . . . . . . . . 19

          4.     The EEOC Acted in Good Faith. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

          5.     Allowing the EEOC Claim Serves the Public Interest.. . . . . . . . . . . . . 21

    D.     THE BANKRUPTCY ERRED BY DRAWING AN ANALOGY
          BETWEEN THE EEOC SUING ON BEHALF OF A CLASS AND
          A CLASS PROOFS OF CLAIM BY PRIVATE LITIGANTS
          UNDER RULE 23.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

POINT II     IN THE ALTERNATIVE, THIS CASE SHOULD BE REMANDED
          TO THE BANKRUPTCY COURT TO RECONSIDER THE
          GOVERNMENT'S MOTION IN LIGHT OF THE IMPLOSION
          OF DELPHI'S EXIT FINANCING AGREEMENTS.. . . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## CASES

*Aristeia Capital, LLC v. Calpine Corp. (In re Calpine Corp.),*
     Nos. 05-60200 (BRL), 07 Civ. 8493 (JGK), 2007 WL 4326738
     (S.D.N.Y. Nov. 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bailey v. Jamesway Corp. (In re Jamesway Corp.),*
     Nos. 95 B 44821 (JLG), 96/8389A, 1997 WL 327105
     (Bankr. S.D.N.Y. June 12, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ball v. A.O. Smith Corp.,*
     321 B.R. 100 (N.D.N.Y. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Castellano v. City of New York,*
     142 F.3d 58 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*EEOC v. Associated Dry Goods Corp.,*
     449 U.S. 590 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 20

*EEOC v. Morgan Stanley,*
     132 F. Supp. 2d 146  (S.D.N.Y. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*EEOC v. Shell Oil Co.,*
     466 U.S. 54 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*EEOC v. University of Pittsburgh,*
     643 F.2d 983 (3d Cir. 1981).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*EEOC v. Waffle House, Inc.,*
     534 U.S. 279 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Federal Express Corp. v. Holowicki,*
     — U.S. —, 128 S.Ct. 1147 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*General Telephone Co. of the Northwest, Inc. v. EEOC,*
     446 U.S. 318 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Manufacturing, Inc.),*
     62 F.3d 730 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re 50-Off Stores, Inc.*,
  220 B.R. 897 (Bankr. W.D. Tex. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Bemis Co.*,
  279 F.3d 419 (7th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Drexel Burnham Lambert Group, Inc.*,
  148 B.R. 1002 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Ephedra Products Liability Litigation*,
  329 B.R. 1 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Enron Corp.*,
  No. 01-16034 (AJG), 2007 WL 610404
  (Bankr. S.D.N.Y. Feb. 23, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Enron Corp.*,
  No. 01-16034 (ALG), 2007 WL 294114
  (Bankr. S.D.N.Y. Jan. 31, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Enron Corp.*,
  No. 01-16034 (AJG)
  (Bankr. S.D.N.Y. Sept. 23, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Musicland Holding Corp.*,
  362 B.R. 644 (Bankr. S.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Northwest Airlines, Corp.*,
  No. 05-17930 (ALG), 2007 WL 498285
  (Bankr. S.D.N.Y. Feb. 9, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Radio-Keith-Orpheum Corp.*,
  106 F.2d 22 (2d Cir. 1939).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Sacred Heart Hospital of Norristown*,
  177 B.R. 16 (Bankr. E.D. Pa. 1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Sage-Dey, Inc.*,
  170 B.R. 46 (Bankr. N.D.N.Y. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.)*,
  419 F.3d 115 (2d Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 15, 19

iv

*New England Merchants National Bank v. Iran Power Generation & Transmission Co.*,
646 F.2d 779 (2d Cir. 1981).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Occidental Life Insurance Co. of California v. EEOC*,
432 U.S. 355 (1977).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22

*Pioneer Investment Services Co. v. Brunswick Associates*
*Limited Partnership*, 507 U.S. 380 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Schwartz v. Aquatic Dev. Group, Inc. ( In re Aquatic Dev. Group, Inc.*),
352 F.3d 671 (2d Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Schweitzer v. Consolidated Rail Corp. (In re Central Railroad Co. of*
*New Jersey)*, 758 F.2d 936, (3d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Silivanch v. Celebrity Cruises, Inc.,*
333 F.3d 355 (2d Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 19

**STATUTES, REGULATIONS, AND RULES**

Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

11 U.S.C. § 101(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 U.S.C. § 501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11 U.S.C. § 502(b)(9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 157. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 158(a)(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1334. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

The Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*

42 U.S.C. § 12117(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

42 U.S.C. § 2000e-5.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 2000e-5(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 11, 12

42 U.S.C. § 2000e-5(f)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C. § 2000e-8(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 1601.6(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 C.F.R. § 1601.7(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 1601.9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 C.F.R. § 1601.14(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 C.F.R. § 1601.15-17. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 C.F.R. § 1601.18. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 1601.19(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 1601.21. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 1601.22. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

29 C.F.R. § 1601.24. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 1601.25. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 1601.26. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 1601.27. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 1601.28. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 1601.29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 1601.34. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

29 C.F.R. § 1610.17(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Bankr. P. 3003. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

Fed. R. Bankr. P. 8002(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Bankr. P. 8013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23

Fed. R. Bankr. P. 9006. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 13

Fed. R. Civ. P. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 21, 22

Fed. R. Evid. 408(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

## OTHER AUTHORITIES

23 WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5312 (2008). . . . . . . . . . . . . 17

110 Congressional Record 8193. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

S. Rep. No. 95-989 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787. . . . . . . . . . . . . . . . . . . . . 9

## PRELIMINARY STATEMENT

In September 2006, the United States Equal Employment Opportunity Commission received a charge of discrimination from a Delphi Corporation employee after that employee was fired for refusing to give Delphi a blanket release to review his medical records — an allegation which, if true, violates the Americans with Disabilities Act.  After going through a statutorily-required investigative process in an undisputedly efficient and diligent manner, the EEOC filed an enforcement action on behalf of *all* Delphi employees in the Western District of New York.  Because Delphi was in bankruptcy, the EEOC also filed a proof of claim in Delphi's pending bankruptcy case in the Southern District of New York for monetary damages corresponding to those sought in the civil suit.  The bankruptcy court, however, rejected the EEOC's claim as untimely because it was filed after the July 31, 2006, deadline for filing proofs of claim, and expunged the claim.

That decision was wrong, and should be reversed.  *First*, the bankruptcy court incorrectly determined, as a matter of law (and on an issue of first impression), that the EEOC should have filed a proof of claim prior to filing its enforcement action in district court, even though the EEOC is statutorily required — on pain of imprisonment — to keep charges of discrimination confidential until after the EEOC administrative process is complete, and either the EEOC files a civil enforcement action or the charging party files suit on his own behalf.  *Second*, the bankruptcy court abused its discretion by failing to consider that the proper determination "is at bottom an equitable one, taking account of all relevant circumstances."  *Third,* and finally, the bankruptcy court erred in holding that the EEOC's class claim was barred by virtue of the fact that none of the Delphi employees who comprised the class had filed their own claims:  a long line of Supreme Court cases makes clear that when the EEOC sues on behalf of a class, it does not do so under Rule 23, standing in the shoes of the employees, but rather sues on its own behalf, in its capacity as a law enforcement

agency.

## JURISDICTIONAL STATEMENT

The bankruptcy court had jurisdiction over this dispute because it arose under title 11 of the United States Code, or arose in or was related to a case under title 11. *See* 28 U.S.C. §§ 157, 1334. This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

## ISSUES PRESENTED FOR REVIEW

1.   Whether the bankruptcy court erred in holding that the EEOC was required to file a proof of claim based upon a charge of employment discrimination during the period of time that the EEOC was statutorily constrained to keep the existence of that charge confidential.

2.   Whether the bankruptcy court abused its discretion in holding that the EEOC did not demonstrate "excusable neglect" for filing its proof of claim after the bar date, where all of the factors identified by the Supreme Court — prejudice, the reason for and length of delay, and good faith — weigh in favor of the EEOC, as do the public interests.

3.   Whether the bankruptcy court erred in applying Civil Rule 23 principles to hold that the EEOC was precluded from asserting a claim on behalf of a class of employees because the employees had not filed individual claims.

4.   Whether the case should be remanded to the bankruptcy court in light of new developments that have dramatically altered the landscape of this bankruptcy, including the collapse of Delphi's exit financing and its need to file an amended plan of reorganization.

## STATEMENT OF THE CASE

### A.   The EEOC's Investigation of Delphi's Unlawful Sick Leave Policy

In late August 2006, the EEOC National Call Center was first contacted about a potential claim of discrimination against Delphi Corporation ("Delphi") by Stanley Straughter, a Delphi

employee in Rochester, New York.  (R 297).  On August 30, 2006, the EEOC sent Straughter a questionnaire to complete.  (R 297, 307).  Among other things, Straughter's responses indicated that he had been fired by Delphi on August 17, 2006, "for not showing [his] medical history," after calling in sick to work on August 14th and 15th. (R 297-98, 309-15).  Specifically, Delphi required Straughter to execute a medical release so that it could obtain more information about his medical condition from his personal physician.  Straughter ultimately signed the release, but modified it to permit Delphi only to verify that he was unable to work on August 14th and 15th, but not to discuss his actual medical condition.  Delphi did not accept this release and immediately fired Straughter for being an "unsatisfactory temporary employee."  (R 297-98).

Based on Straughter's allegations, EEOC Investigator Jennifer Carlo drafted a formal Charge of Discrimination for Straughter's signature, which she sent to him in mid-September 2006.  (R 298, 317-18).  Straughter formally filed his Charge of Discrimination (No. 525-2006-0134) with the EEOC on September 22, 2006.  (R 298, 323-24).  In early October, the EEOC forwarded the Charge to Delphi for a response, as required by the ADA.  (R 298).  *See* 42 U.S.C. §§ 2000e-5(b), 12117(a).  The EEOC also served Delphi with a Request for Information and indicated that it was open to "consider[ing] a resolution by mutually agreed to settlement."  (R 298-99, 326-31).

Delphi subsequently requested an extension of time in which to respond to the Charge of Discrimination, to which the EEOC consented.  (R 299, 333).  On November 6, 2006, Delphi responded to the Charge.  (R 299).  At that time, Delphi's position was to essentially admit the factual allegations of Straughter's complaint, but to contend that he could not demonstrate a prima facie case of retaliation or violation of the ADA.  Relying on EEOC guidance that an employer "may ask an employee to justify his/her use of sick leave by providing a doctor's note or other explanation, as long as it has a policy or practice of requiring all employees . . . to do so," Delphi argued that it

could require its employees to execute a release so that the company could obtain medical records and speak with personal physicians to question the validity of a doctor's note.[1] (R 299, 335-43).

On January 31, 2007 — more than a month after its deadline (which the EEOC had extended) — Delphi responded to the EEOC's Request for Information. The EEOC determined that it needed further information and sent Delphi a second Request for Information in late February 2007. Delphi was to respond by March 19, 2007. (R 300-01, 364-65). On April 4, 2007, Delphi responded to the EEOC's second Request for Information, providing some documentation and objecting to a variety of the EEOC's requests as irrelevant or overly broad. (R 301, 367-69). Throughout this process, the EEOC simultaneously pursued other avenues of investigating the Charge of Discrimination, including collecting further information from Straughter. (R 301).

On May 22, 2007, the EEOC issued its Letter of Determination. In relevant part, the EEOC concluded that Delphi's sick leave policy violated the ADA and that Delphi's discharge of Straughter for opposing the policy constituted unlawful retaliation. (R 371-72). The following day, the EEOC contacted Delphi to begin conciliation efforts (as required by law), and proposed a comprehensive remedy for Delphi's discriminatory practices, including, among other things, eliminating Delphi's sick leave policy and paying monetary damages to Straughter to make him whole for Delphi's unlawful discrimination, as well as similar relief for any other individuals determined to have been harmed by Delphi's discriminatory practices. On June 12, 2007, Delphi rejected the EEOC's offer of conciliation, and indicated that it did "not intend to submit a counter-proposal." (R 302, 379).

A week later, the EEOC confirmed to Delphi that conciliation efforts had failed, and that the

---

[1]     Delphi has since denied that it has a sick leave policy requiring employees to execute blanket medical releases. (R 379 ("the Commission's apparent view of this case as involving a policy or procedure that extends across Delphi is simply incorrect.")).

case was being forwarded to the legal unit of the EEOC's New York District Office for review to determine whether the EEOC would file an enforcement action in United States District Court. (R 302-03, 381). The EEOC sent a similar notice to Straughter. (R 302-03, 383). The pre-filing process — and indeed the entire investigation — unfolded very quickly. (R 792 (finding it undisputed that the EEOC's investigation and filing was "a timely and rapid process")). Just over three months after conciliation efforts failed, the EEOC filed a complaint on behalf of a class of Delphi employees in the Western District of New York seeking injunctive relief, monetary relief to make the victims of Delphi's policy whole, and punitive damages. (R 303, 385-90). Delphi's answer, filed on November 30, 2007, did not assert any bankruptcy-related defenses. (R 395-99).

Meanwhile, Delphi and approximately forty of its domestic affiliates (the "Debtors") had filed chapter 11 petitions in the United States Bankruptcy Court for the Southern District of New York. (R 3). The court established a bar date of July 31, 2006, for the filing of proofs of claim (R 695), which had passed even before Straughter contacted the EEOC. On October 16, 2007, the EEOC filed Claim number 16727 (the "EEOC Claim"), the claim at issue, asserting an unliquidated priority claim corresponding to damages caused by Delphi's pre-petition conduct. (R 304, 392). The EEOC also filed Claim number 16728, asserting an unliquidated priority administrative expense claim arising out of Delphi's post-petition conduct, which is not subject to the bar date. (R 304, 394, 696). On October 26, 2007, Debtors filed objections to these claims. (R 2-91, 102-111, 754).

**B.     The Late Claim Motion and the Bankruptcy Court's Decision**

On January 28, 2008, Debtors filed a notice setting forth a deadline for the Government to file a motion for leave to file the EEOC Claim. (R 269-71). In response, on Friday, February 22, 2008, the Government moved for an order permitting the EEOC Claim to be accepted for filing. (R 277-95). Delphi filed its opposition papers the following Thursday, for the first time responding to

the Government's arguments — first advanced in the EEOC's November 2007 response to Debtors' October 2007 objections — and laying out their legal theories.  (R 405-26).

The bankruptcy court heard the motion the next day, February 29, 2008, (R 440-44), receiving written documents, declarations and deposition testimony into evidence in lieu of live witnesses.  (R 445, 731).  On the basis of this evidence and the oral argument, the bankruptcy court concluded that the material facts underlying the Government's motion, as recited above, were uncontested, but orally denied the motion and expunged the EEOC's claim.  (R 788, 806).

Applying the "excusable neglect" standard that applies to late-filed claims, *see* Fed. R. Bankr. P. 9006(b), and the related balancing test established by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), (R 782-83, 795), the bankruptcy court first questioned — but did not decide one way or the other — whether the EEOC's failure to file a proof of claim earlier than it did was the product of neglect at all.  (R 795-97).  Despite its "serious doubts" on that point, the court then rested its decision largely on the conclusion that "the EEOC's neglect is not excusable," (R 803), concluding that the delay in filing the claim was caused by the EEOC itself, and was without good reason.  (R 797-800).  The court also rejected the Government's argument, premised on statutory and public policy considerations, that the EEOC was required to complete its administrative process before unveiling Straughter's charge of discrimination.  (R 802-03).  Last, finding a close analogy to Fed. R. Civ. P. 23, the court held that the EEOC could not assert "a class claim on behalf of people who did not file pre-petition claims for the very same claim before the bar date."  (R 805-06).

A final order embodying the bankruptcy court's decision was entered on March 6, 2008 (R 779), and on Monday, March 17, 2008, the Government timely appealed (R 808).  *See* Fed. R. Bankr. P. 8002(a) (ten-day period to appeal); Fed. R. Bankr. P. 9006(a) (computation of time).

6

## STANDARD OF REVIEW

"Bankruptcy court decisions to deny a request to file late are reviewed for abuse of discretion." *Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 124 (2d Cir. 2005) ("*Enron*"). A bankruptcy court abuses its discretion when it arrives at "(i) a decision resting on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (ii) a decision that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 678 (2d Cir. 2003) (internal quotation and alteration marks omitted). Thus, this court should accept the bankruptcy court's "factual findings unless clearly erroneous but review[] its conclusions of law *de novo*." *Enron*, 419 F.3d at 124; *see also* Fed. R. Bankr. P. 8013.

## ARGUMENT

### POINT I

### THE EEOC'S CLAIM SHOULD HAVE BEEN ACCEPTED FOR FILING

**A.    THE CLAIMS PROCESS, THE BAR DATE ORDER, AND THE LAW OF EXCUSABLE NEGLECT**

Under the Bankruptcy Code and Rules, "[a]ny creditor . . . whose claim . . . is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim" to protect its right to payment. Fed. R. Bankr. P. 3003(c)(2); *see also* 11 U.S.C. § 501. "The court shall fix and *for cause shown* may extend the time within which proofs of claim or interest may be filed." Fed. R. Bankr. P. 3003(c)(3) (emphasis supplied); *see also* 11 U.S.C. § 502(b)(9).

Although "cause" is not defined in Rule 3003(c), that sub-section is also read in conjunction with Bankruptcy Rule 9006(b)(1), which provides:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).  "The burden of proving excusable neglect lies with the late-claimant." *Enron*, 419 F.3d at 121 (citation omitted).  The Supreme Court has identified a non-exhaustive list of factors that should be considered to determine whether the neglect is "excusable":

> [1]  the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*Pioneer,* 507 U.S. at 395.  The Second Circuit has observed that three of the four *Pioneer* factors — the danger of prejudice, the length of the delay, and the movant's good faith — will in most cases "weigh in favor of the party seeking the extension."  *Enron*, 419 F.3d at 122 (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003)).  The determination, therefore, should be "focused on the third factor: the reason for the delay, including whether it was within the reasonable control of the movant."  *Id.* (quoting *Silivanch*, 333 F.3d at 366, and *Pioneer*, 507 U.S. at 395).

Despite the "hard line" taken in this circuit on claims of excusable neglect, *Silivanch*, 333 F.3d at 370, the excusable neglect determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Pioneer*, 507 U.S. at 395 (footnote omitted).  "No single circumstance controls, nor is a court to simply proceed down a checklist ticking off traits.  Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other."  *In re 50-Off Stores, Inc.*, 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998).

**B.    THE GOVERNMENT WAS PROHIBITED FROM FILING ITS CLAIM UNTIL THE COMMISSIONERS OF THE EEOC AUTHORIZED SUIT**

As the bankruptcy court found, the EEOC waited until October 2007 to file its proof of claim

out of its "desire to comply with 42 U.S.C. § 2000e-5." (R 802). No court has ever decided whether the EEOC must file a proof of claim if the bar date comes before the agency's administrative process runs its course, or whether another other body of federal law must give way when it conflicts with a bar date provided for under the Bankruptcy Code. Nevertheless, the bankruptcy court held, without citation or elaboration, that "the [confidentiality] requirements set forth in 42 U.S.C. § 2000e-5 would not . . . reasonably be read to preclude [the EEOC] from filing a proof of claim in this case before the commencement of District Court litigation" and "what Congress had in mind there was far more extensive than either the definition of 'charge' or a 'civil action' in 42 U.S.C. § 2000e-5." (R 803). As the court recognized, the anti-discrimination laws and the Bankruptcy Code are (at least superficially) in conflict, but the court was wrong to resolve that conflict in favor of the Code.

### 1. "Claims" Under the Bankruptcy Code

Under the Code, a "claim" is read broadly to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5) & (A); *see* S. Rep. No. 95-989, at 22 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5808 ("By this broadest possible definition and by the use of the term throughout the title 11 . . . the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case."). Notably, "a person may hold a 'contingent' claim and thereby be a 'creditor' within the meaning of the Bankruptcy Act, even though he presently has no cause of action against the debtor." *Schweitzer v. Consol. Rail Corp. (In re Central Railroad Co. of N.J.*), 758 F.2d 936, 942 (3d Cir. 1985) (citing *In re Radio-Keith-Orpheum Corp.*, 106 F.2d 22, 26-27 (2d Cir. 1939)).

Thus, absent statutory authority to the contrary, the EEOC's claim would ordinarily be thought to arise — for bankruptcy purposes — when a charge of discrimination is filed with the

agency. *Cf. Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 360 (1977) (recognizing

that EEOC's *cause of action* accrues under Title VII thirty days after charge is filed).[2]  The anti-

discrimination laws, however, provide that the EEOC cannot publically disclose a charge when it

is filed with the agency, or at any point before a district court lawsuit is filed.

> **2.     The EEOC is Obligated to Keep Charges of Discrimination Strictly Confidential Until It Completes Its Administrative Process**

Title VII and its regulations set forth "an integrated, multistep enforcement procedure" for

the EEOC to follow in its investigation of complaints of discrimination.  *EEOC v. Shell Oil Co.*, 466

U.S. 54, 62 (1984).  The law ensures strict confidentiality concerning the administrative charge of

discrimination and all information gathered by the EEOC during the investigation of that charge.

> **a.     The EEOC's Administrative Process for Investigating Complaints of Discrimination**

*First*, when the EEOC is contacted by someone complaining of employment discrimination,

it must render assistance in the filing of a formal charge of discrimination, which is filed by or on

behalf of an aggrieved employee, and must be made on oath or affirmation.  *See* 42 U.S.C. § 2000e-

5(b); 29 C.F.R. §§ 1601.6(a), 1601.9.  *Second*, the EEOC serves the employer with a copy of the

charge, and gives the employer an opportunity to respond.  *See* 42 U.S.C. § 2000e-5(b); 29 C.F.R.

§ 1601.14(a)*.  Third*, the EEOC "shall make an investigation" into the allegations of discrimination,

and is provided with numerous tools (including subpoena power) to do so.  42 U.S.C. § 2000e-5(b)*;

see also* 29 C.F.R. §§ 1601.15-17.  *Fourth*, the EEOC must make a determination about the validity

of the charge.  *See* 42 U.S.C. § 2000e-5(b)*.  If the EEOC concludes after investigating "that there

---

[2]     While the bankruptcy court seemed to entertain the possibility that the EEOC's claim might not have arisen until the EEOC had reason to believe that Straughter's claim had merit (R 797-98), the cases cited by the court make clear that under principles of bankruptcy law alone, a claim arises regardless of whether a claimant thinks it will have merit.  (R 798-99).

is not reasonable cause to believe that the charge is true," it must dismiss the charge and notify both the employer and employee, who may then file a private suit. *See id.*; *see also* 29 C.F.R. §§ 1601.18, 1601.19(a), 1601.28. If, on the other hand, the EEOC concludes that a charge of discrimination is founded, *see* 29 C.F.R. § 1601.21, then it moves to the *fifth* step of the process, where it is required to engage in "informal methods of conference, conciliation, and persuasion" to try to eliminate the unlawful employment practice. 42 U.S.C. § 2000e-5(b); *see also* 29 C.F.R. § 1601.24. *Sixth*, if those conciliation efforts fail, the EEOC "may bring a civil action against any respondent . . . named in the charge," except for municipal government entities, in which case the Department of Justice has jurisdiction. *See* 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. §§ 1601.27, 1601.29.

### b.    The Confidentiality Requirements

During the entire administrative process — up until either the EEOC or the individual charging party files a lawsuit in the district court — both the employee and the employer are guaranteed absolute confidentiality, on pain of imprisonment. This integral part of the process appears several times in Title VII and its regulations:

> It shall be unlawful for any officer or employee of the Commission to make public *in any manner whatever any information* obtained by the Commission pursuant to its authority under this section *prior to the institution of any proceeding under this subchapter* involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year.

42 U.S.C. § 2000e-8(e) (emphasis supplied); *id.* § 2000e-5(b) ("Charges [of discrimination] shall not be made public by the Commission. . . . Nothing said or done during and as part of [conciliation] endeavors may be made public by the Commission . . . ."); 29 C.F.R. §§ 1601.7(a), 1601.22, 1601.26, 1610.17(b). In *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590 (1981), the Supreme

Court defined "public," in this context, as meaning anyone other than "the parties to the agency proceeding." *Id.* at 598. The Court explained that this view was "consistent with the coordinated scheme of administrative and judicial enforcement which Congress created to enforce Title VII." *Id.* at 600. Disclosures are authorized, in other words, only to further Title VII's remedial purposes. *See id.* at 602; *EEOC v. Univ. of Pittsburgh,* 643 F.2d 983, 986-87 (3d Cir. 1981) ("*Associated Dry Goods* mandates disclosure only to . . . the charging party, and her attorney"); *EEOC v. Morgan Stanley*, 132 F. Supp. 2d 146, 157 (S.D.N.Y. 2000) (The EEOC has a "statutory obligation not to disseminate materials except to . . . the parties to the proceeding and their attorneys.").

In short, Title VII and its regulations prohibit the EEOC from revealing a charge of discrimination, or information gathered when investigating that charge, to anyone other than the parties and their lawyers, or to "witnesses where disclosure is deemed necessary for securing appropriate relief." 29 C.F.R. § 1601.22; *see also* 42 U.S.C. § 2000e-5(b). Disclosure to any other entity, even if necessary to secure relief, is prohibited.

**3.    Because It is Required to Keep Allegations of Discrimination Confidential, the EEOC is not Required to File a Proof of Claim Until the EEOC or Charging Party Files an Action**

Taken together, Title VII and the Bankruptcy Code seem to conflict. Under the Code, the EEOC had a "claim" — a contingent right to payment — the moment that Straughter filed his charge of discrimination with the agency. But under Title VII, the EEOC was not authorized to disclose the existence of that charge "prior to the institution of any proceeding under the ADA," 29 C.F.R. § 1601.22, *i.e.*, a civil enforcement action by the EEOC or a private suit by Straughter himself. The bankruptcy court resolved this conflict in favor of the Code, noting only that Congress intended the concept of "claim" to sweep broadly. (R 803). But the court ignored the fact that the anti-discrimination laws are equally broad, *see Castellano v. City of New York*, 142 F.3d 58, 69 (2d Cir.

1998) (noting "ADA's broad remedial purpose"); *see also* 29 C.F.R. § 1601.34 ("These rules and regulations shall be liberally construed to effectuate the purpose and provisions of title VII and the ADA."), and it eschewed established principles for choosing between two bodies of conflicting law.

Though seemingly at odds, the Code and Title VII can be reconciled here because, though the confidentiality provisions of Title VII are largely inviolate, the claims-filing procedures of the Bankruptcy Code have exceptions. As discussed above, the only exceptions to the EEOC's confidentiality provisions permit it to disclose information to the parties and their lawyers. Bankruptcy Rule 3003(c), on the other hand, permits the court to extend the bar date "for cause shown," including upon a showing of excusable neglect under Bankruptcy Rule 9006(b)(1). Title VII and the Code may be harmonized by recognizing — as the Government urged the bankruptcy court to do — that respecting the confidentiality provisions of Title VII and permitting the EEOC to complete its statutorily-mandated administrative process are good cause for tolling the bar date.

Even if the Court concludes (as the bankruptcy court seemingly did) that the conflict between Title VII and the Bankruptcy Code is intractable, then the conflict should be resolved in favor of the Government. Any other result — which would require the EEOC to file a proof of claim every time it receives a charge of discrimination after the bar date — would (i) frustrate pre-litigation settlement of charges by unduly embarrassing both the charging party and the respondent, moving resolution of the charges into a litigation posture prematurely, (ii) require the EEOC to put its imprimatur on uninvestigated and potentially unsubstantiated charges of discrimination by filing proofs of claim in its own name, diluting the agency's effectiveness in enforcing the anti-discrimination laws, (iii) undermine the EEOC's investigation by making witnesses less likely to be candid about the substance of the charges, and (iv) require the EEOC to expend incredible resources filing proofs of claim corresponding to virtually every charge of discrimination, drawing resources away from the

prosecution of meritorious claims. *See generally Federal Express Corp. v. Holowicki*, — U.S. —, 128 S.Ct. 1147, 1156 (2008) (noting that the EEOC "processes over 175,000 inquiries a year," of which 76,000 are ultimately docketed as "charges").

Permitting the EEOC to file after the bar date, on the other hand, does not in any serious way affect the function of the Bankruptcy Code because the EEOC would only actually file a late claim in that very small subset of cases where it (a) completes its investigation after the bar date *and* (b) actually proceeds to file an enforcement action on its own behalf. Even in those few cases, the EEOC is one creditor among many, and would only in the rare case have a financial claim the magnitude of which would be significant in comparison to the debtor's entire estate.

Accordingly, to the extent the anti-discrimination and bankruptcy laws conflict on this point, Title VII displaces the Bankruptcy Code, and the EEOC's claim should have been allowed.

## C.    UNDER THE EXCUSABLE NEGLECT STANDARD, THE EEOC CLAIM SHOULD HAVE BEEN ACCEPTED

Assuming that the EEOC was permitted to file a proof of claim notwithstanding Title VII's confidentiality rules, its failure to do so could still be forgiven if it was excusable. The bankruptcy court, in concluding that the EEOC failed to demonstrate excusable neglect, abused its discretion for two reasons. *First*, the bankruptcy court's decision was in many places unsupported (and in some cases contradicted) by the undisputed evidence; in other places, the bankruptcy court based its decision on inadmissible evidence; and in others still its decision was not based on any evidence at all, but arose from "generic" concerns. *Second*, the bankruptcy court weighed the equities without regard for the unique role of the EEOC, whose claim was asserted only in the public interest. Reviewing the actual evidentiary record, "taking account of all relevant circumstances surrounding the [EEOC]'s omission," and weighing the equities accordingly, *Pioneer*, 507 U.S. at 395, there can

14

be no dispute that the EEOC's failure to timely file a proof of claim was excusable.

### 1.    There Was No Prejudice From the EEOC Claim

The first *Pioneer* factor concerns whether the debtor will be prejudiced by allowing the claim to be deemed timely filed.  As the Second Circuit has held, this factor typically favors the movant seeking to file a late claim.  *See Enron*, 419 F.3d at 122.  While the Supreme Court did not define the term "prejudice," an important consideration is whether "the debtor's plan was formulated, negotiated, and confirmed before notice was given of a substantial late claim."  *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.),* 62 F.3d 730, 737 (5th Cir. 1995) (citing *In re Drexel Burnham Lambert Group, Inc.,* 148 B.R. 1002, 1007 (S.D.N.Y. 1993)).  Such is not the case here.

The bankruptcy court confirmed Delphi's chapter 11 plan on January 25, 2008. (R 415).  On October 2, 2006 — over fourteen months earlier — the EEOC forwarded Straughter's Charge of Discrimination to Delphi for a response, along with a Request for Information.  A give-and-take process with Delphi ensued, until the EEOC confirmed to Delphi on June 19, 2007, that conciliation efforts had failed.  Debtors knew of the EEOC's claim — both in the Western District of New York and in the bankruptcy court — long before confirmation of their chapter 11 plan, and had actual notice of the substance of the EEOC's claim almost immediately after Stanley Straughter filed his charge with the EEOC.  Debtors therefore cannot seriously claim prejudice.  *See In re Sage-Dey, Inc.,* 170 B.R. 46, 53 (Bankr. N.D.N.Y. 1994) (finding excusable neglect for late filing of IRS claim, holding that "there is no danger of prejudice to the Debtors in that they were notified of the [basis for the claim] prior to the bar date and failed to respond to the inquiry by the IRS").

The bankruptcy court perceived three sources of prejudice if the EEOC Claim were allowed, all flowing from the so-called Equity Purchase and Commitment Agreement ("EPCA") that governed Debtors' exit financing and, accordingly, their emergence from bankruptcy.  But the

undisputed evidence does not support these findings.

*First*, and foremost, the court was concerned that the size of the EEOC Claim could endanger the EPCA, pursuant to which Debtors obtained $2.55 billion in exit financing and which was an integral part of their plan. If Debtors defaulted under the EPCA, in other words, the entire reorganization was endangered. Among other things, one of the closing conditions of the EPCA was that the total of all unsecured claims not exceed $1.45 billion. Because Debtors were only $2 million under that cap when the plan was confirmed in late January 2008, the bankruptcy court worried that allowing the EEOC Claim could result in a default under the EPCA. (R 805 (liquidation of the EEOC's claim "would not necessarily result in an amount under the [EPCA] cap")).

On May 23, 2007, the EEOC sent Delphi a conciliation letter containing, among other things, the EEOC's monetary demands, which Delphi rejected. Consistent with the undue delay exception in Fed. R. Evid. 408(b), the Government submitted this letter to the court— along with virtually all of the pre-litigation correspondence between the EEOC and Delphi — to demonstrate that the EEOC did not unduly delay in adhering to its statutory obligations to attempt conciliation prior to bringing an enforcement action. (R 726). In their response to the Government's motion, however, Delphi referred not only to the dollar figures demanded in the EEOC's conciliation letter, but also to an e-mail sent by the EEOC's counsel to Delphi's counsel on January 24, 2008 — marked "FOR SETTLEMENT PURPOSES ONLY" — containing an offer to cap the EEOC's unliquidated claim. (R 716). While claiming that it was "negating a negative contention of undue delay . . . under Federal Rule 408," (R 749), Delphi sought to admit this evidence to probe the amount of the claim, a use specifically barred by Rule 408. (R 409 (comparing amounts of EEOC demands)). Over the Government's objection, the bankruptcy court admitted the e-mail as "marginally relevant." (R 731).

The bankruptcy court's Rule 408 ruling was erroneous and affected the EEOC's substantive

rights. *See Ball v. A.O. Smith Corp.,* 321 B.R. 100, 106 (N.D.N.Y. 2005) (district court reviews the bankruptcy court's evidentiary rulings for abuse of discretion, and will reverse the ruling when it "affects a party's substantial rights."). Debtors offered the evidence not to negate a contention of undue delay, as required by the plain language of Rule 408(b), but to *support* their own contention of undue delay (i.e., "to rebut the rebuttal of the contention of undue delay," (R 730)). The bankruptcy court therefore abused its discretion in admitting the evidence at all. *See* 23 WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5312 (2008) ("Rule 408 permits the use of compromise evidence to 'negative' a contention of delay. This means, of course, that the offeror cannot himself raise the issue of delay as a justification for the admission of the evidence.")

Even if the evidence *was* properly admitted, it does not indicate that the EEOC Claim would cause Debtors to exceed the EPCA cap. According to Dean Unrue, Debtors' Claims Administrator, Debtors were *at least* $24 million below the $1.45 billion cap by the time the EEOC Claim was litigated. (R 657-58 (noting that $24 million was the "worst case scenario," if every disputed claim was allowed in full)). As the EEOC's highest demand was to cap its claim at $15 million (R 716), the evidence does not support the court's finding that the claim might cause Delphi to default. In any event, as the EPCA subsequently collapsed, *see infra* Part II, there is no longer a concern about the impact of the EEOC Claim on the EPCA cap.

The *second* prejudice identified by the bankruptcy court stemmed from its concern that the EEOC Claim might not "be liquidated in time to preclude an assertion of default under the EPCA." (R 805). The bankruptcy court did not define the meaning of "in time" in this context, although presumably there is some time constraint in the EPCA before which all unliquidated claims were to have been capped or estimated. The bankruptcy court did not elaborate or explain why the EEOC Claim could not be liquidated or capped in time, and Delphi itself did not advance this argument.

17

Indeed, Delphi's Claims Administrator identified only two, related sources of prejudice from the EEOC Claim: that the EEOC Claim itself might cause a default because its size could cause the aggregate value of unsecured claims to exceed the $1.45 billion EPCA cap, and that it might encourage other late claims, which in turn would also endanger the $1.45 billion EPCA cap. (R 649). Both of those concerns surround the *size* of the claims, not the time it might take to liquidate them. Mr. Unrue disclaimed any other source of prejudice. (R 649). The bankruptcy court's concern about the timing of the EEOC Claim's liquidation, therefore, finds no support in the record.

*Third*, the bankruptcy court stated that granting the motion "would encourage other late claimants to seek relief under Rule 9006 or to seek reconsideration of the Court's prior orders denying them relief . . . ." (R 805). But this generic "floodgates" concern does not apply to the EEOC's claim. The claim — filed by a law enforcement agency that must adhere to statutory and regulatory requirements, and which acts primarily to vindicate the public interest — is sufficiently unique that allowing it would not result in similar late claims because there *are* no similar claims. *See In re Enron Corp.*, No. 01-16034 (AJG), order at 12-14 (Bankr. S.D.N.Y. Sept. 23, 2003) (permitting multi-million dollar claim filed five months after bar date, noting that the "the facts here are sufficiently unique that . . . allowing [the claimant]'s late proofs of claim against the Debtors would [not] create 'floodgate' concerns") (quoted in *Enron*, 419 F.3d at 132). Debtors' Claims Administrator acknowledged as much when he admitted that "[n]othing in particular about the EEOC claim [would open the floodgates to other late claims]; just the fact that it is a proof of claim that's filed late." (R 650; *see also* R 650-51 (noting that no other government agencies have filed late claims, except taxation authorities)).

## 2.    The Length of Delay Was Not Excessive

The second *Pioneer* factor concerns the length of delay and similarly tips in favor of allowing

the late claim. Delphi fired Straughter three weeks after the July 31, 2006, bar date. Straughter contacted the EEOC on August 22, 2006, and filed his formal complaint with the agency on September 22, 2006. The EEOC promptly opened an investigation. Unable to reach a settlement with Delphi, the EEOC initiated an enforcement action in district court on September 28, 2007. The EEOC then promptly filed a proof of claim; thus, there can be no contention that the EEOC dragged its feet during this process, and Delphi has not asserted as much.

The Second Circuit has adopted a flexible test for determining whether the length of delay is substantial enough to warrant disallowance of the claim. *See Enron,* 419 F.3d at 128. In this case, after learning of Straughter's complaint, the EEOC moved expeditiously through the investigative and conciliation process, as required by regulation, before commencing the enforcement action and submitting the proof of claim to Debtors' Claims Administrator. As discussed above, all of these events *pre-dated* the confirmation of Debtors' chapter 11 plan on January 25, 2008. This was not a case where the creditor unnecessarily delayed.

### 3.    The EEOC Had Good Reason to Delay

The third *Pioneer* factor — the reason for delay and whether it was in the control of the movant — is the focal point of excusable neglect analysis. *Enron,* 419 F.3d at 122. As a threshold matter, the EEOC did not receive notice of Straughter's claim until three weeks *after* the bankruptcy court's bar date. And even if the EEOC's delay in filing its proof of claim could be characterized as lengthy, "a long delay . . . with a strong explanation might be more acceptable than a short delay with a weak explanation . . . ." *Id.* at 129. While "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule," *Silivanch,* 333 F.3d at 366, the EEOC had a strong explanation for its delay because, as the bankruptcy court found, the delay "resulted from [the EEOC's] desire to comply with [Title VII]." (R 802).

19

In weighing this factor against the EEOC, the bankruptcy court relied on case law involving *private* litigants. (R 798-99). Citing *Aristeia Capital, LLC v. Calpine Corp. (In re Calpine Corp.)*, Nos. 05-60200 (BRL), 07 Civ. 8493 (JGK), 2007 WL 4326738, at *6-7 (S.D.N.Y. Nov. 21, 2007) (claims of convertible note holders and indenture trustees held untimely), *In re Northwest Airlines, Corp.*, No. 05-17930 (ALG), 2007 WL 498285, at *3 (Bankr. S.D.N.Y. Feb. 9, 2007) (denying corporate creditor's motion for reconsideration of denial of leave to file a late claim), and *In re Enron Corp.*, No. 01-16034 (ALG), 2007 WL 294114 (Bankr. S.D.N.Y. Jan. 31, 2007) (denying gas supplier's motion to file a late claim), the court ruled that "the EEOC would have believed that there was a basis for asserting a pre-petition 'claim' at least as early as November 2006, and it acknowledges that it made a formal 'determination' on May 22, 200[7]." (R 798). The court then held that "the EEOC has not explained why it could not have filed a protective proof of claim, particularly given the fact that it had formed the belief that there was a claim at least by May 22, 200[7], and arguably — or more than arguably — would have been able to do so at least by November 2006." (R 800).[3]

The EEOC's adherence to Title VII's confidentiality provisions was consistent with a recognition that "[t]he maximum results from the voluntary approach will be achieved if the investigation and conciliation are carried on in privacy." *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 599 n.16 (1981) (quoting 110 Cong. Rec. 8193). Given the importance of confidentiality, the EEOC reasonably could have concluded that it was not obligated to file a proof of claim until it concluded its investigation and conciliation attempts and filed suit. Even if this were not the case,

---

[3]    As the Determination Letter was issued on May 22, 2007, the bankruptcy court presumably was mistaken in repeatedly referring to the letter as having been issued in 2006. The mistake could be significant, however. If the court fixed the date of the Determination Letter one year too early (before the bar date passed), that error could have influenced its *Pioneer* analysis.

the EEOC's desire to comply with Title VII provides a powerful reason for delay under *Pioneer*.

### 4. The EEOC Acted in Good Faith

The last *Pioneer* factor concerns whether the movant acted in good faith. Where, as here, "there is no indication in the record that [the movant] acted in a manner other than in good faith in seeking to file [the] proof of claim," the good-faith factor tips in favor of the movant. *In re Enron Corp.*, No. 01-16034 (AJG), 2007 WL 610404, at *11 (Bankr. S.D.N.Y. Feb. 23, 2007). The EEOC acted in good faith by pursuing its investigation quickly and then filing its claim promptly after filing its enforcement action, and the bankruptcy court made no finding to the contrary.

### 5. Allowing the EEOC Claim Serves the Public Interest

Although the Supreme Court did not specifically identify the public interest as a relevant factor in *Pioneer*, it recognized that the excusable neglect determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. While the bankruptcy court did not find public policy concerns relevant to the excusable neglect analysis, (R 748 (dismissing policy concerns and asserting that the statutory confidentiality argument is "the only argument that has any possible merit here")), the Government respectfully submits that the public interest is relevant and strongly undermined by expunging the EEOC Claim.

### D. THE BANKRUPTCY COURT ERRED BY DRAWING AN ANALOGY BETWEEN THE EEOC SUING ON BEHALF OF A CLASS AND A CLASS PROOF OF CLAIM BY PRIVATE LITIGANTS UNDER RULE 23

The bankruptcy court also erred as a matter of law in rejecting the EEOC Claim because of "the reluctance of courts in this district to certify classes for purposes of class proofs of claim under Bankruptcy Rule 7023 and Federal Rule 23." (R 805-06). Noting its concern that "no individual employee or former employee . . . filed a claim that could be construed to assert this type of claim, which the EEOC is asserting on behalf of such a class," the bankruptcy court analogized to Fed. R.

21

Civ. P. 23 in concluding that "it would similarly undermine my bar date order to let in a class claim on behalf of people who did not file pre-petition claims for the very same claim before the bar date, under these particular circumstances, at least." (R 805-06). This finding was an abuse of discretion.

The Supreme Court repeatedly has held that when the EEOC commences suit, it does not act strictly on behalf of the aggrieved employees, but rather to protect the public from illegal employment discrimination. *See EEOC v. Waffle House, Inc.,* 534 U.S. 279, 291 (2002) ("[Title VII] clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake."); *General Tel. Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 326 (1980) ("When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination."); *Occidental Life Ins. Co. of Cal. v. EEOC,* 432 U.S. 355, 368 (1977) ("[T]he EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a federal administrative agency charged with the responsibility of investigating claims of employment discrimination and settling disputes, if possible, in an informal, noncoercive fashion.").

In *General Telephone,* the Court permitted the "class action aspects" of an EEOC claim for injunctive relief and backpay to go forward, reasoning that "the EEOC need look no further than § 706 [of Title VII] for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals. Its authority to bring such actions is in no way dependent upon Rule 23, and the Rule has no application to a § 706 suit." *Id.* at 324. The Court also noted "that the EEOC is not merely a proxy for the victims of discrimination and that the EEOC's enforcement suits should not be considered representative actions subject to Rule 23." *Id.* at 326.

Thus, there is no "close analogy" between an EEOC claim and a class proof of claim under Rule 23. (R 805). As Judge Posner recently wrote for the Seventh Circuit: "The main reason the

22

Supreme Court [in *General Telephone*] thought Rule 23 inapplicable to EEOC class actions was that

the EEOC is not an exact or even close counterpart to the class representative (and class lawyer) in

a Rule 23 class action. *In re Bemis Co.,* 279 F.3d 419, 421 (7th Cir. 2002).[4]  The analogy to Rule

23 also fails because "EEOC enforcement actions are not limited to the claims presented by the

charging parties." *General Telephone,* 446 U.S. at 331.  Indeed, the EEOC's investigation in this

case led it to file an enforcement action that went significantly farther than the charging party's

allegations, encompassing an alleged company-wide discriminatory policy.

## POINT II

### IN THE ALTERNATIVE, THIS CASE SHOULD BE REMANDED TO THE BANKRUPTCY COURT TO RECONSIDER THE GOVERNMENT'S MOTION IN LIGHT OF THE IMPLOSION OF DELPHI'S EXIT FINANCING AGREEMENTS

For the reasons just given, the bankruptcy court's denial of the Government's motion should

be reversed.  But even if this Court is not inclined to do so, it should vacate the bankruptcy court's

decision and remand to that court because the relevant facts of Debtors' bankruptcy have changed

dramatically since the court's decision.  *See* Fed. R. Bankr. P. 8013 ("On an appeal the district court

. . . may . . . remand with instructions for further proceedings.").  The bankruptcy court based its

finding that Delphi would be prejudiced by the EEOC Claim almost entirely on the terms of the

EPCA, a "crucial piece of the intricate and complex arrangements necessary for the consummation

of the Plan . . . pursuant to which [Delphi's] Investors . . . commit[ted] to invest up to $2.55 billion

of equity financing in the reorganized Delphi."  Decl. of Matthew L. Schwartz, dated July 14, 2008,

---

[4]      Indeed, the bankruptcy court exclusively cited to cases involving class proofs of claim by *private* litigants under Rule 23.  (R 806 (citing *In re Musicland Holding Corp.,* 362 B.R. 644 (Bankr. S.D.N.Y. 2007); *In re Ephedra Prods. Liab. Litig.,* 329 B.R. 1 (S.D.N.Y. 2005); *Bailey v. Jamesway Corp. (In re Jamesway Corp.),* No. 95 B 44821, 1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997); *In re Sacred Heart Hosp. of Norristown,* 177 B.R. 16 (Bankr. E.D. Pa. 1995)).

Ex. A, ¶ 6.  The EPCA contained limits on the aggregate amount of unsecured claims, and the court determined that if the EEOC were permitted to file its claim, those limits would be endangered, in turn endangering the EPCA and, ultimately, Delphi's entire restructuring.

Subsequent to the bankruptcy court's decision, however, Delphi's exit financiers unilaterally terminated the EPCA.  Debtors were clear about the effect of this termination:  "[The investors'] failure to honor their contractual commitments . . . derailed Delphi's progress toward emergence from Chapter 11 in April 2008, and has prevented the consummation of the Plan."  *Id.* ¶ 4.  On May 16, 2008, Delphi commenced two adversary proceedings, *Delphi Corp. v. Appaloosa Management L.P.,* Adv. No. 08-1232, and *Delphi Corp v. UBS Securities, LLC,* Adv. No. 08-1233, seeking specific performance of EPCA plan investors' obligations to fund their equity commitments. Schwartz Decl., Exs. A & B.  The bankruptcy court has recognized, however, that the chances of resurrecting the EPCA are remote, *see id.,* Ex. C at 53 (calling Delphi's demands for specific performance "bizarre" in light of its fraud allegations), and Delphi claims that it "is trying as hard as it can to develop a modified plan," *id.* at 27.  Thus, the EPCA is almost certainly dead.  The prejudices to Debtors that the bankruptcy court relied upon, which flowed directly from EPCA, are moot — a dramatic change in the posture of the bankruptcy.[5]

The Second Circuit has held that when post-judgment developments alter the basis for the decision on appeal, the case should be remanded for consideration of the new state of affairs:

---

[5]    In another recent development, Delphi's fraud allegations concerning Appaloosa's termination of the EPCA led to the filing of two adversary proceedings against Debtors on July 22, 2008 — one by the Wilmington Trust Company (No. 08-1367), the trustee on $2 million in senior notes and debentures issued by Delphi, and one by Delphi's unsecured creditors committee (No. 08-1368).  The complaints seek revocation of the order confirming Debtors' chapter 11 plan on the ground that the confirmation was procured by fraud.  This is yet another reason that the bankruptcy court should be permitted to revisit its prejudice ruling under *Pioneer*.

24

> Ordinarily, "where circumstances have changed between the ruling below and the decision on appeal, the preferred procedure is to remand to give the district court an opportunity to pass on the changed circumstances," unless the new situation "demands one result only."

*New England Merchants Nat'l Bank v. Iran Power Generation & Transmission Co.*, 646 F.2d 779, 783-84 (2d Cir. 1981) (citations omitted) (remanding decision that Iran not entitled to sovereign immunity in light of new international agreements).  In light of the EPCA's dissolution and the likely unraveling of Delphi's plan of reorganization, the bankruptcy court on remand may weigh the equities differently under *Pioneer*.  Thus, even if this Court finds the bankruptcy court's *legal* rulings correct, it should remand to the bankruptcy court to reconsider its *discretionary* decision.

## CONCLUSION

The judgment of the bankruptcy court should be reversed and the EEOC should be permitted to file its claim.  In the alternative, the judgment of the bankruptcy court should be vacated and the case remanded to the bankruptcy court to consider whether the United States can demonstrate excusable neglect for its late filing of the EEOC Claim in light of events subsequent to the judgment.

Dated: New York, New York
        August 1, 2008

                                 Respectfully submitted,

                                 MICHAEL J. GARCIA,
                                 United States Attorney
                                 *Attorney for the Appellant*

By:    /s/  Matthew L. Schwartz
                                 MATTHEW L. SCHWARTZ
                                 JOSEPH N. CORDARO
                                 Assistant United States Attorneys
                                 Telephone: (212) 637-1945
                                 Facsimile:  (212) 637-2750
                                 E-mail: matthew.schwartz@usdoj.gov