SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan, III

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Appellee, Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : |  |
|  | : |  |
| Plaintiff/Appellant, | : | Dist. Case No. 08-CV-3753 (NRB) (AJP) |
|  | : |  |
| - against - | : |  |
|  | : |  |
| DELPHI CORPORATION, et al., | : |  |
|  | : |  |
| Defendant/Appellee. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BRIEF OF APPELLEE DELPHI CORPORATION, ET AL. IN OPPOSITION TO
APPEAL OF THE UNITED STATES OF AMERICA

("APPELLEE'S BRIEF")

FED. R. APP. P. 26.1 STATEMENT

The following is a list of parent companies, subsidiaries, and affiliates of Delphi

Corporation and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC,

debtors and debtors-in-possession in the above-captioned cases, that have issued shares to the public:

Delphi Corporation

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................................1

STATEMENT OF APPELLATE JURISDICTION .......................................................................4

STATEMENT OF THE ISSUES ON APPEAL...........................................................................4

STANDARD OF APPELLATE REVIEW.....................................................................................5

STATEMENT OF THE CASE.........................................................................................................6

ARGUMENT .....................................................................................................................................11

     I.     THE BANKRUPTCY COURT'S DETERMINATION THAT THE EEOC
          FAILED TO ESTABLISH EXCUSABLE NEGLECT SHOULD BE
          AFFIRMED  ........................................................................................................11

          A.     The Bankruptcy Court Was Correct In Finding The Government
                Lacked Sufficient Reason For A 13-Month Delay ....................................12

                1.     The Government's Argument That EEOC Confidentiality
                        Rules Justify Its Untimely Claim Is Flawed .................................14

          B.     The Bankruptcy Court's Finding Of Prejudice Was Not An Abuse Of
                Discretion..................................................................................................17

                1.     Prejudice To The Debtors Still Exists And There Is No
                        Justification For Remanding The Case To The Bankruptcy
                        Court ..............................................................................................19

CONCLUSION...................................................................................................................................21

TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

ACEquip Ltd. v. Am. Eng'g Corp., 315 F.3d 151 (2d Cir. 2003).........................................5

Allen Oil Co. v. Comm'r, 614 F.2d 336 (2d Cir. 1980)....................................................17

Anderson v. Bessemer City, 470 U.S. 564 (1985) ...........................................................5

Aristeia Capital, L.L.C. v. Calpine Corp. (In re Calpine Corp.),
      Nos. 05-60200 (BRL), 07 Civ. 8493 (JGK),
      2007 WL 4326738 (S.D.N.Y. 2007)..............................................................11, 12, 18

In re Asia Global Crossing Ltd., 324 B.R. 503 (Bankr. S.D.N.Y. 2005) ..........................12

In re Best Prods. Co., Inc., 140 B.R. 353 (Bankr. S.D.N.Y. 1992) ..................................12

Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.),
      179 B.R. 33 (S.D.N.Y. 1995)..........................................................................5

In re Dana Corp., No. 06-10354 (BRL), 2007 WL 1577763
      (Bankr. S.D.N.Y. May 30, 2007).................................................................18, 20

EEOC v. Jefferson Dental Clinics, PA, 478 F.3d 690 (5th Cir. 2007) ...........................14

In re Enron Corp., No. 01-16034 (AJG), 2007 WL 294114
      (Bankr. S.D. N.Y. 2007) .............................................................................13

In re Enron Creditors Recovery Corp., 370 B.R. 90 (Bankr. S.D.N.Y. 2007) .................18

First Fid. Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.), 937
      F.2d 833 (2d Cir. 1991)................................................................................12

General Electric Co. v. Joiner, 522 U.S. 136 (1997) ...........................................................5

Integrated Res., Inc. v. Ameritrust Co. Nat'l Ass'n (In re Integrated Res., Inc.),
      157 B.R. 66 (S.D.N.Y. 1993)........................................................................5, 11

Inwood Labs. V. Ives Labs., Inc., 456 U.S. 844 (1982) ...................................................5

In re Kmart Corp., 381 F.3d 709 (7th Cir. 2004)..............................................................18

Leonard v. Argento, 699 F.2d 874 (7th Cir. 1983)............................................................19

McSherry v. Trans World Airlines, Inc., 81 F.3d 739 (8th Cir. 1996) ..............................13

Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),
419 F.3d 115 (2d Cir. 2005).............................................................11, 12, 18

Morton v. Mancari, 417 U.S. 535 (1974) ...........................................................17

New England Merchants Nat'l Bank v. Iran Power Generation & Transmission Co.,
646 F.2d 779, 873 (2d Cir. 1981)..................................................................20

In re Northwest Airlines Corp., No. 05-17930 (ALG),
2007 WL 498285 (S.D.N.Y. Feb. 9, 2007).................................................13

O'Loghlin v. County of Orange, 229 F.3d 871 (9th Cir. 2000) ..........................13

Otten v. Stonewall Insurance Co., 538 F.2d 210 (8th Cir. 1976) .......................20

Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship,
507 U.S. 380 (1993)...............................................................................4, 11, 17

In re R.H. Macy & Co., Inc., 161 B.R. 355 (Bankr. S.D.N.Y. 1993)................11

Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355 (2d Cir. 2003) ....................11

United States v. Abel, 469 U.S. 45 (1984)............................................................5

United States v. United States Gypsum Co., 333 U.S. 364 (1948) .....................5

United States ex rel. Grynberg v. Enron Corp. (In re Enron Corp.),
364 B.R. 482 (S.D.N.Y. 2007)...............................................................5, 11

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135 (2d Cir. 2001) ......5


STATUTES AND RULES                                    PAGE(S)

11 U.S.C. § 101(5) ..............................................................................................16

11 U.S.C. § 1125..................................................................................................1

29 U.S.C. § 158(a) ..............................................................................................4

42 U.S.C. § 2000e-5..................................................................................... passim

42 U.S.C. § 12101 et seq.......................................................................................7

Fed. R. Bankr. P. 7023 ........................................................................................14

Fed. R. Bankr. P. 8002(a) ..............................................................................................4

Fed. R. Bankr. P. 8013 ...................................................................................................5

Fed. R. Bankr. P. 9006(a) ..............................................................................................4

Fed. R. Civ. P. 23 ........................................................................................................14

Fed. R. Evid. 408 .........................................................................................................19

29 C.F.R. § 1601.7(a) ...................................................................................................17

29 C.F.R. § 1601.22 .....................................................................................................17

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS LLC"), debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), submit this response brief in opposition to the appeal of the United States of America (the "Government") from a March 6, 2008 order (the "Bankruptcy Court Order") (R 779) of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") denying the Government's motion for leave to file a late proof of claim (Bankr. S.D.N.Y. Court Case No. 05-44481, Docket No. 12831) (the "Motion"). (R 277.)

PRELIMINARY STATEMENT

The primary purpose of chapter 11 of the bankruptcy code (the "Bankruptcy Code") is to facilitate the rehabilitation and reorganization of debtors. To achieve this goal, the debtor and its constituents must clearly understand the amount and nature of claims that arose prior to the filing of the chapter 11 petition date to formulate and consummate a plan of reorganization. Without this certainty, it would be difficult, if not impossible, to determine how much creditors will receive on account of their claims or whether a plan of reorganization meets confirmation standards under section 1125 of the Bankruptcy Code. Equally important, a debtor would be severely constrained in attracting plan investors or exit financing lenders to provide sufficient funding to enable a debtor to emerge from chapter 11.

To facilitate Delphi's reorganization, on April 12, 2006, the Bankruptcy Court entered a claims bar date order ("Bar Date Order")[1] mandating that any person or entity file a

---

[1]     Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed. R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206). (R 692.)

1

proof of claim on or before July 31, 2006 (the "Bar Date") or forever be barred from asserting a prepetition claim against Delphi. In response to the Bar Date Order, more than 16,000 creditors filed claims against the Delphi estates totaling over $37 billion. Delphi promptly undertook a massive claims administration project to reconcile and, if warranted, contest the allowance of filed claims.

Beginning in the fall of 2006, Delphi negotiated and formulated a plan of reorganization with its creditor constituents and plan investors. On September 6, 2007, Delphi filed a plan of reorganization (the "Plan")[2] that incorporated the complex and detailed agreements between Delphi and its constituents and provided a framework for investors and lenders to fund Delphi's emergence from chapter 11. A key feature of the Plan was a requirement that certain general unsecured claims not exceed $1.45 billion.

Almost 14 months after the Bar Date, and after the Plan had been filed, the Equal Employment Opportunity Commission (the "EEOC") filed two unliquidated claims[3] on behalf of Stanley Straughter and "a class of similarly situated individuals who have been adversely affected," who have yet to be identified, alleging, among other things, that they are entitled to

---

[2]    On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264). Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 11386) and the First Amended Disclosure Statement with respect to the Plan (Docket No. 11388). On January 25, 2008, the Bankruptcy Court entered an order confirming the Plan (as modified) (Docket No. 12359), which became a final order on February 4, 2008. (R 810.)

[3]    Proof of claim no. 16727, the subject of this appeal, was filed by the EEOC on October 12, 2007. (R 1.) The EEOC also filed proof of claim no. 16728 seeking similar relief with regard to postpetition conduct. Proof of claim no. 16728 is not the subject of this appeal. (R 393.)

2

damages under the Title I of the Americans with Disabilities Act (R 1) due to Delphi's supposed unlawful medical release policy.  The EEOC's claim involving Mr. Straughter, who was hired and fired after the petition date, was never subject to the Bar Date Order and, thus, is not involved in this appeal.  However, the EEOC's untimely claim seeking a recovery on behalf of the unidentified "similarly situated individuals" (the "ADA Claim") is squarely barred by the Bar Date Order.

Thirteen months after the Bar Date and beyond over a year after the EEOC discovered the factual basis underlying the ADA Claim (R 766), the Government moved for leave to file the late ADA Claim.  The Bankruptcy Court denied the motion primarily on the grounds that the Government failed to demonstrate "excusable neglect" justifying the late filing. This appeal ensued.

Despite the numerous arguments raised in the Government's brief, the central issue before this Court is whether the Bankruptcy Court abused its discretion in finding that the EEOC failed to show excusable neglect with respect to the untimely filed ADA Claim.  As more fully discussed below, the Bankruptcy Court appropriately exercised its discretion to deny the Government's request.

Also, the confidentiality restrictions contained in 42 U.S.C. § 2000e-(5), first raised by the Government at oral argument after the evidentiary record was closed, do not excuse the EEOC's failure to promptly file a proof of claim.  (R 736-37.)  The testimony of the EEOC's sole witness never asserted that a confidentiality restriction prevented the EEOC from filing a claim.  Id.  Moreover, the EEOC has filed proofs of claim in other chapter 11 cases, thus contradicting the Government's position.  Finally, the Government could have immediately filed a proof of claim and maintained the confidentiality of Mr. Straughter's charge by filing detailed

claims information under an exhibit to the proof of claim or by seeking leave to file a proof of claim under seal.  It did neither.

Accordingly, the Bankruptcy Court's findings are fully supported by the record and applicable law, and the Bankruptcy Court Order should be affirmed.

<u>STATEMENT OF APPELLATE JURISDICTION</u>

Following an evidentiary hearing held on February 29, 2008, the Bankruptcy Court entered a final order on March 6, 2008.  The Government filed a timely appeal pursuant to Fed. R. Bankr. P. 8002(a) and 9006(a) on March 17, 2008.  This is an appeal from a final order of the Bankruptcy Court over which this Court has jurisdiction pursuant to 29 U.S.C. § 158(a).

<u>STATEMENT OF THE ISSUES ON APPEAL</u>

1.    Did the Bankruptcy Court clearly err when it found that the Government failed to demonstrate excusable neglect for its untimely proof of claim where the Bankruptcy Court correctly applied the Supreme Court's balancing test set for in <u>Pioneer</u> (<u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 395 (1993)) and the EEOC filed its proof of claim more than a year after learning of Delphi's allegedly unlawful policy?

2.    Did the Bankruptcy Court abuse its discretion in barring the EEOC's untimely claim when it found that the Government had failed to introduce any credible or otherwise admissible evidence that a confidentiality provision contained in 42 U.S.C. § 2000e-5 prevented the Government from timely filing its proof of claim and that any confidentiality concerns alleged by the Government could have been addressed either through the terms of the Bar Date Order itself or by filing its proof of claim under seal?

<u>STANDARD OF APPELLATE REVIEW</u>

A bankruptcy court's excusable neglect determination is reviewed for an abuse of discretion.  To show excusable neglect in bankruptcy court, the claimant bears the burden of demonstrating both that its untimely filing was due to neglect, and that such neglect was excusable.  <u>United States ex rel. Grynberg v. Enron Corp.</u> (In re Enron Corp.), 364 B.R. 482, 485 (S.D.N.Y. 2007).  The bankruptcy court abuses its discretion only when "no reasonable man could agree with the bankruptcy judge's decision." <u>Integrated Res., Inc. v. Ameritrust Co. Nat'l Ass'n</u> (In re Integrated Res., Inc.), 157 B.R. 66, 72 (S.D.N.Y. 1993).  The appellate court does not consider whether it would have made the same decision, but only whether the decision was reasonable.  <u>In re Enron Corp.</u>, 364 B.R. at 486;  <u>see also</u> <u>Constant Ltd. P'ship v. Jamesway Corp.</u> (In re Jamesway Corp.), 179 B.R. 33, 39 (S.D.N.Y. 1995).  When there are two permissible views of the evidence, the bankruptcy court's choice between those views cannot be clearly erroneous.  <u>See</u> <u>Inwood Labs. v. Ives Labs., Inc.</u>, 456 U.S. 844, 857-58 (1982); <u>Anderson v. Bessemer City</u>, 470 U.S. 564, 574 (1985).  Consequently, the Bankruptcy Court's findings of fact may be reversed only if this Court is definitely and firmly convinced that a mistake has been made.  <u>See</u> <u>id.</u>; <u>see also</u> Fed. R. Bankr. P. 8013 (findings of fact "shall not be set aside unless clearly erroneous"); <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948); <u>U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.</u>, 241 F.3d 135, 145-46 (2d Cir. 2001).

Like excusable neglect determinations, evidentiary rulings are also reviewed for abuse of discretion.  <u>See</u> <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 143 (1997); <u>see also</u> <u>United States v. Abel</u>, 469 U.S. 45, 54 (1984) (same).  The trial court is accorded "wide discretion in determining the admissibility of evidence under the Federal Rules."  <u>Abel</u>, 469 U.S. at 54; Fed. R. Bankr. P. 8013 ("due regard shall be given to the opportunity of the bankruptcy court to judge

the credibility of the witnesses").  Moreover, it is well established that the decision of the trial

court can be affirmed on any basis supported by the record, even if the trial court did not rely on

the grounds on which the appellate court renders its decision.  See, e.g., ACEquip Ltd. v. Am.

Eng'g Corp., 315 F.3d 151, 155 (2d Cir. 2003).

STATEMENT OF THE CASE

On October 8 and 14, 2005 (the "Petition Date"), the Debtors filed voluntary

petitions in the Bankruptcy Court for reorganization relief under chapter 11 of title 11 of the

United States Code, 11 U.S.C. §§ 101-1330, as then amended.

On April 12, 2006, the Bankruptcy Court entered the Bar Date Order setting the

July 31, 2006 Bar Date for creditors to file proofs of claim in the Debtors' chapter 11 cases.  (R

624.)  The Bar Date Order specifically provided for confidentiality of all supporting

documentation to any proof of claim.  At the hearing subsequently to consider the Government's

Motion, the Bankruptcy Court found that, on or about April 20, 2006, notice of the Bar Date was

provided to numerous parties, including the EEOC, the United States Attorney for the Southern

District of New York, and substantially all of Delphi's employees.  (R 624-26, 630; 792-3.)

More than 16,000 proofs of claim were timely filed by the Bar Date (including hundreds of

contingent and unliquidated claims).  (R 10.)  The Bankruptcy Court found that not a single

employee subject to Delphi's allegedly unlawful medical release policy had ever filed a proof of

claim asserting that he or she was injured by the policy.  (R 792-93.)  Together with scheduled

liabilities for which no proof of claim had been filed, these 16,000-plus proofs of claim asserted

more than $37 billion in liquidated amounts plus certain unliquidated amounts.

Evidence adduced at the hearing on the Motion and considered by the Bankruptcy

Court in reaching its decision included the following: On August 28, 2006, the EEOC received a

call from a former Delphi temporary employee named Stanley Straughter, who informed the EEOC that he had been terminated by Delphi on August 17, 2006, allegedly for refusing to execute a medical release form permitting a Delphi doctor to confirm with Mr. Straughter's personal physician that Mr. Straughter had been absent from work due to a medical condition. (R. 788.)  Jennifer Carlo, an investigator employed by the EEOC, investigated Mr. Straughter's complaint that Delphi violated his rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., (the "ADA") by reason of this medical release policy.  Three weeks later, Ms. Carlo drafted a charge of discrimination which Mr. Straughter reviewed, approved, and filed with the EEOC.  (R 789.)  The charge of discrimination asserted, among other things, that Mr. Straughter's rights under the ADA were violated due to Delphi's "policy and/or practice of making unlawful medical inquiry when employees are out sick."  (R 469, 788.)  Accordingly, the Bankruptcy Court found that the EEOC had learned of the Delphi medical release policy at issue in this litigation no later than November 2006, when Ms. Carlo began to work with Mr. Straughter to prosecute his claim.  (R 798.)

On September 28, 2007, the EEOC filed a complaint against Delphi in the United States District Court for the Western District of New York, alleging violations of the ADA based on Mr. Straughter's charge of discrimination.  The record in this case further indicates that the EEOC investigative team did not need "to get advance authorization from the commissioner or at EEOC headquarters in Washington prior to filing [the EEOC's] proofs of claim in this case." (R 796.)  Nevertheless, the EEOC did not file its proofs of claim, one alleging prepetition violations, the ADA Claim, and one alleging postpetition violations (the "Postpetition Claim") until October 16, 2007 -- 11 months after the EEOC became aware of the nature of Straughter's claim -- at which point it asserted unliquidated claims on behalf of employees allegedly harmed by this

medical release policy prior to the Petition Date and after the Petition Date, respectively.  On October 26, 2007, the Debtors filed their objection to the ADA Claim, which the Government purports not only to bring on behalf of Mr. Straughter, but also on behalf of other unidentified Delphi employees affected by the allegedly unlawful Delphi medical release policy. [4]

Evidence in the record indicated that during the 13-month period between the time when Mr. Straughter contacted the EEOC and the date the EEOC filed the ADA Claim, Delphi undertook a massive claims estimation project on account of the Equity Purchase Commitment Agreement (the "EPCA") to reconcile and liquidate asserted trade and other prepetition general unsecured claims outstanding as of the Petition Date.  Those calculations ultimately evolved into a closing condition (the "EPCA Target") that Delphi was required to meet to obtain funding under a plan of reorganization proposed by a group of outside investors (the "Plan Investors").  (SA 226.)  Throughout 2006 and into 2007, the EPCA Target was modified to account for progress made during Delphi's claims administration process and to otherwise update claims estimates.  In early September 2007, the Debtors, the Plan Investors, and other parties in interest finalized the EPCA Target at $1.45 billion and incorporated the EPCA Target into Delphi's Plan.  Because the EEOC's did not file a proof of claim in the Debtors' chapter 11 cases prior to the finalization of the EPCA Target, the Debtors did not consider the EEOC's ADA Claim in calculating and negotiating the cap imposed under the EPCA Target.

---

[4]    Although the Debtors deny engaging in any unlawful conduct under the ADA, the Debtors do not, at this time, seek to disallow and expunge the Postpetition Claim filed to cover postpetiton periods because, if valid, it would constitute an administrative expense claim not subject to the Bar Date Order.

On January 25, 2008, the Bankruptcy Court entered an order (Docket No. 12359) confirming the Plan, as modified. (R 810.)

On February 22, 2008, the Government filed its Motion for leave to file its late ADA Claim. In support of its Motion, the Government submitted the declaration of Margaret A. Malloy, the EEOC's trial lawyer assigned to Mr. Straughter's matter and the person who filed the ADA Claim. Pursuant to the Motion, the Government attempted to demonstrate that its failure to timely file the ADA Claim, as required by the Bar Date Order, was the result of excusable neglect. In its Motion, the Government did not offer any evidence that it considered confidentiality concerns at any time prior to filing the ADA Claim. (R 277.)

On February 28, 2008, the Debtors filed their an Objection To Motion For Leave To File Late Claim (Docket No. 12907) (the "Objection"). (R 405.) In support of the Objection, the Debtors submitted (i) the Declaration Of Evan Gershbein In Support Of Debtors' Objection To United States Of America's Motion For Leave To File Late Claim, executed and sworn to on February 27, 2008 by Evan Gershbein of Kurtzman Carson Consultants LLC ("KCC"), the noticing agent in these chapter 11 cases (R 621), and (ii) the Declaration Of Dean Unrue In Support Of Debtors' Objection To United States Of America's Motion For Leave To File Late Claim, executed and sworn to on February 27, 2008 by Dean Unrue, the claims administrator for Delphi in these chapter 11 cases. (R 628.)

On February 29, 2008, the Bankruptcy Court held a hearing on the Motion, during which the Bankruptcy Court considered evidence, in addition to the above referenced declarations and deposition transcripts from declarants, that the Debtors were below the EPCA Target by a slim $2 million, that shortly after the conclusion of the Plan confirmation hearing, the EEOC indicated it would not agree to cap the ADA Claim in an amount less than $15 million

(the "January E-mail"), and that the effectiveness of the Plan is contingent on, among other things, satisfaction of the EPCA Target.  (R 716, 718, 805.)  By agreement of the parties, live testimony was not introduced.  (R 731.)  At oral argument, for the first time, the Government explained that the confidentiality provisions contained in 42 U.S.C. § 2000e-5 were the reason for its 13 month-long delay in filing the ADA Claim.  (R 736, 801.)  At the hearing, the Bankruptcy Court made a credibility determination with respect to the statements made by counsel for the EEOC based on the record before it, that the Government's argument that certain confidentiality provisions prevented the EEOC from filing a timely proof of claim was "contrary to the reasonable inference one can draw from the deposition testimony" of the Government's only proffered witness.  (R 733, 771.)

After considering the evidence submitted by the parties, the Bankruptcy Court also found that the Government had failed to demonstrate that the EEOC followed a general practice "of not filing proofs of claim, even as a protective matter, until it has made a determination and commenced civil action."  (R 772, 802.)  Therefore, based on its findings of fact and conclusions of law, the Bankruptcy Court concluded that the Government had not carried its burden to show excusable neglect for its untimely filed proof of claim, and on March 6, 2008 entered an order denying the Motion.  (R 779.)  On March 17, 2008, the Government filed a notice of appeal.  (R 808.)  Currently, the Debtors continue to operate under the confirmed Plan and are pursuing a suit in the Bankruptcy Court seeking to compel the Plan Investors' performance under the EPCA.

<u>ARGUMENT</u>

I.    **THE BANKRUPTCY COURT'S DETERMINATION THAT THE
GOVERNMENT FAILED TO ESTABLISH EXCUSABLE NEGLECT
SHOULD BE AFFIRMED**

A bankruptcy court's determination of "excusable neglect" for untimeliness is reviewed for an abuse of discretion. <u>In re Enron Corp.</u>, 364 B.R. at 485. A bankruptcy court abuses its discretion only when "no reasonable man could agree with the bankruptcy judge's decision." <u>Calpine</u>, 2007 WL 4326738, at *3 (quoting <u>In re Integrated Res., Inc.</u>, 157 B.R. 66, 72 (S.D.N.Y. 1993)). The Government's argument that the Bankruptcy Court abused its discretion by finding that the Government failed to demonstrate excusable neglect should be rejected.

In determining the existence of excusable neglect, a bankruptcy court must analyze and balance "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." <u>Pioneer</u>, 507 U.S. at 395. The Second Circuit has noted that "reason for the delay" is the most important factor in the analysis. Additionally, the Second Circuit has found that "'the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule' and 'that where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the <u>Pioneer</u> test.'" <u>Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.</u> (In re Enron Corp.), 419 F.3d 115, 123 (2d Cir. 2005) (quoting <u>Silivanch v. Celebrity Cruises, Inc.</u>, 333 F.3d 355, 366-67 (2d Cir. 2003)). Furthermore, in this case, as the party seeking an extension, the Government bore the burden of proving excusable neglect. <u>See In re R.H. Macy & Co., Inc.</u>, 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993). After a balancing of

equitable factors,[5] the Bankruptcy Court did not err in its finding that the EEOC failed to present evidence sufficient to warrant a departure from the Second Circuit's strict approach with respect to excusable neglect.

      A.      The Bankruptcy Court Was Correct In Finding That The Government Lacked Sufficient Reason For A 13-Month Delay

In essence, the Government argues that it was free to ignore the Bar Date Order -- a court-ordered mandate -- while it investigated the ADA Claim. This position is legally untenable. The Bankruptcy Court correctly found that the Government failed to provide a valid explanation for the EEOC's 13-month filing delay.

The most important Pioneer factor in determining excusable neglect is the reason for the delay. See Midland, 419 F.3d at 123. The bar date "serves the important purpose of enabling the parties in interest to ascertain with reasonable promptness the identity of those making claims against the estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization." In re Best Prods. Co., Inc., 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992) (citing First Fid. Bank, N.A. v. Hooker Invs., Inc. ( In re Hooker Invs., Inc.), 937 F.2d 833, 840 (2d Cir. 1991)); see also In re Asia Global Crossing Ltd., 324 B.R. 503, 508 (Bankr. S.D.N.Y. 2005). Like all other creditors, the EEOC must abide by Bar Date Order and, at a minimum, file a protective proof of claim if it wished to preserve any right to a distribution from Delphi's estates. See In re Calpine Corp., 2007 WL 4326738, *6-7 (S.D.N.Y. 2007) (finding that a delay of over six months in filing claims after bar date not result of

---

[5]      The Government asserts the Bankruptcy Court dismissed public policy concerns. However, the Government failed to introduce any admissible evidence that would support such considerations. Moreover, public policy favoring the successful reorganization of debtors under chapter 11, and integrity of court orders, would be undermined if the Government was free to ignore bar date orders under the pretext that it is investigating charges of discrimination.

excusable neglect and noting that the claimants "had the ability to . . . file supplemental Proofs of Claim at any time and have not offered any explanation as to why no such supplements were filed until such a late date.")  The EEOC has provided no evidence for its delay other than a hearsay assertion that it was investigating Mr. Straughter's complaint.  Mere investigation alone is not sufficient to toll the Bar Date.  In re Northwest Airlines Corp., 2007 WL 498285, *3 (Bankr. S.D.N.Y. 2007) ("[Movant] cannot properly ground its excusable neglect argument on the fact that it conducted an investigation and tried to resolve the issue by good faith negotiations. All of this can be done after a filing is first made and rights are preserved."); see In re Enron Corp., 2007 WL 294114, *2 (Bankr. S.D.N.Y. 2007) (holding a creditor did not satisfy the excusable neglect standard when the delay was the result of an inability to verify certain information, and the debtor's refusal to provide certain documentation).

Although the Government may not have had knowledge of Mr. Straughter or his allegations of discrimination until after the Bar Date, the unidentified "similarly situated individuals" -- if they exist at all -- clearly were aware of the Bar Date Order, chose not to file proofs of claim, and are thus barred from recovering from the estates.  See O'Loghlin v. County of Orange, 229 F.3d 871, 874 (9th Cir. 2000) (holding that employee's ADA claim based on prepetition conduct was discharged in bankruptcy where employee failed to file proof of claim, even though employee never received right to sue letter from EEOC) (citing McSherry v. Trans World Airlines, Inc., 81 F.3d 739, 741 (8th Cir. 1996)).  The Bankruptcy Court correctly noted that to allow the EEOC to file its untimely ADA Claim on behalf of these employees, and recover compensatory damages directly for the benefit of such employees, on the grounds that the EEOC did not know about the ADA Claim, would allow the employees to circumvent the Bar Date by obtaining a recovery, through the EEOC, on account of claims for which they are

individually barred from asserting.[6]  See E.E.O.C. v. Jefferson Dental Clinics, PA, 478 F.3d 690, 696-99 (5th Cir. 2007) (distinguishing between the EEOC's role when it seeks injunctive relief versus monetary relief and holding that res judicata precludes EEOC from recovering monetary damages on behalf of employee who previously lost individual state court discrimination case).

      1.     The Government's Argument That EEOC Confidentiality Rules Justify Its Untimely Claim Is Flawed

The Government maintains that its 13 month-long delay in filing the ADA Claim resulted solely from its need to comply with the confidentiality provisions of 42 U.S.C. § 2000e-5, an argument raised for the first time during oral argument after the close of the evidentiary record before the Bankruptcy Court.  (R 736, 801.)

This post hoc argument is flawed for three reasons.  First, the Government's sole witness, Ms. Malloy, contradicts the Government's assertion that  42 U.S.C. § 2000e-5 prevented the EEOC from filing a proof of claim.  Ms. Malloy, the EEOC attorney who filed the ADA Claim, testified that no authorization was required to file a proof of claim and never included 42 U.S.C. § 2000e-5 as a reason that prevented the EEOC from filing a proof of claim. In her deposition, Ms. Malloy was asked two questions regarding any protocols for filing a proof of claim,

> "Q. Did you need to get advance authorization from the commissioner or at EEOC headquarters in Washington prior to filing your proofs of claim, that is the proofs of claim in this case?"
> "A.  No."

---

[6]    The Government misconstrues the Court's comments, which are presented out of context, with respect to Fed. R. Civ. P. 23.  The Bankruptcy Court's discussion is merely an analogy and not an application or adoption of Fed. R. Civ. P. 23.  Specifically, the Bankruptcy Court noted "By analogy, although I believe it's a very close analogy, therefore, I believe that the reluctance of courts in this district to certify classes for purposes of class proofs of claim under Bankruptcy Rule 7023 and Federal Rule 23, are instructive." (R 805.)

Next question.
"Q. What authorizations do you need to file a proof of claim in a bankruptcy case on behalf of the EEOC?"
"A. I'm not aware of any particular authorizations that we require."

She was also asked, as the EEOC's witness testifying in support of excusable neglect –

"Q. Are there any other bases of excusable neglect, other than in your memorandum, that the EEOC filed, of which you are aware?"
"A. I think the memorandum covers it"[7]

(R 796-97.)
In response to the Bankruptcy Court's pointed question, counsel for the

Government was unable to confirm whether the EEOC, in fact, had a policy of not filing proofs

of claim prior to commencement of an action in order to comply with 42 U.S.C. § 2000e-5.

(R 746, 802.)  The Bankruptcy Court noted that (see R 802), "[n]either counsel nor Ms. Malloy,

who's obviously an attorney for the EEOC, has been able to tell me whether indeed, the EEOC

follows its practice generally in bankruptcy cases of not filing proofs of claim, even as a

protective matter, until a determination and commenced civil action."[8]  (Id.)  Additionally,  the

Debtors are aware of at least one instance where the EEOC has filed proofs of claim prior to

commencing a civil action.  (See SA 215-25.)[9]

---

[7]    The memorandum to which Ms. Malloy referred was the Government's brief in the support of the Motion.  (R 797.)  The brief never even mentioned 42 U.S.C. § 2000e-5, much less asserted it as a basis to establish excusable neglect.

[8]    The Bankruptcy Court made a credibility determination regarding the Government's argument that they were statutorily precluded from filing the ADA Claim prior to the Bar Date by characterizing the argument as "a unilateral legal interpretation, that frankly to me appears to have been come up with following Ms. Malloy's deposition this morning at oral argument, and to be contrary to her deposition."  (R 773.)

[9]    In the Friedman's Inc. bankruptcy, the EEOC filed proofs of claim prior to commencing litigation in the district court on behalf of one Marie Crawl, alleging a violation of title VII of the Civil Rights Act of 1964, as amended.  Such a filing undermines the

*(cont'd)*

Second, the EEOC had several options available to it that would have enabled it to file a proof of claim while preserving confidentiality for all relevant parties. As the Bankruptcy Court noted, the Bar Date Order contained a confidentiality provision whereby all supporting documentation to a proof of claim would be subject to examination by a limited group of estate representatives and government officials bound by confidentiality restrictions.[10] Thus, the EEOC could easily have filed a confidential proof of claim by submitting a proof of claim form on behalf of "John Doe" unnamed individuals and attaching confidential information supporting the its claim as an exhibit. (R 696.) If it believed this was insufficient, the EEOC could have filed a motion seeking leave to file its ADA Claim under seal. The Government made no attempt to do so.[11]

Third, contrary to the Government's argument, 42 U.S.C. § 2000e-5 should not be interpreted to excuse the EEOC from filing a protective proof of claim. The Government concedes that the ADA Claim is a "claim" for purposes of 11 U.S.C. § 101(5), and would thus be subject to the Bar Date Order. Moreover, it is likewise clear that 42 U.S.C. § 2000e-5 does not

_____

*(cont'd from previous page)*

Government's argument that 42 U.S.C. § 2000e-5 precluded the EEOC from filing a proof of claim before commencing litigation.

[10]    Paragraph 4 of the Bar Date Order provides that "All supporting documentation to any Proof of Claim shall be subject to examination only by the party asserting the Claim, the Debtors, the Debtors' counsel and advisers, the United States Trustee, counsel and advisers to the official committee of unsecured creditors appointed in these chapter 11 cases, [KCC], the claims and noticing agent in these chapter 11 cases, and any personnel of the [Bankruptcy Court] in the performance of their official duties. All such parties are hereby directed to maintain the confidentiality of all supporting documentation to any Proof of Claim and the information herein." (R 696.)

[11]    The Bankruptcy Court noted that the requests for confidentiality protection had been "repeatedly granted in this case, not only to the Debtor but to third parties" (R 771) and that "the EEOC has made not effort in the case to seek direction from the Court on this issue, but merely waited until after the litigation was filed to filed the proof of claim." (R 773.)

expressly prohibit the filing of a proof of claim; it only states that charges of unlawful employment practices "shall not be made public by the Commission."  Because the EEOC could have easily filed a protective proof of claim without publicly disclosing confidential information to third parties, the Government's invocation of 42 U.S.C. § 2000e-5 to excuse its conduct fails. It is a well established canon of construction that "courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."  Morton v. Mancari, 417 U.S. 535, 551 (1974); see also Allen Oil Co. v. Comm'r, 614 F.2d 336, 339 (2d Cir. 1980) (stating that "a statute must, if reasonably possible, be construed in a way that will give force and effect to each of its provisions rather than render some of them meaningless").  Because filing a proof of claim in the Bankruptcy Court does not require making a charge "public" contrary to 42 U.S.C. § 2000e-5, the Bankruptcy Court's decision should be affirmed.[12]

B.    The Bankruptcy Court's Finding Of Prejudice Was Not An Abuse Of Discretion

The Bankruptcy Court was correct in finding the Debtors would be prejudiced if the ADA Claim was allowed.  Contrary to the Government's argument, courts weigh the prejudice to the debtor party, not the party who failed to file its proof of claim in a timely fashion.

---

[12]    Moreover, the EEOC's own regulations undercut the Government's argument. Regulations explaining how a filing by the EEOC of a "charge" of employment discrimination may preserve confidentiality expressly provide that a "written charge need not identify by name the person on whose behalf it is made."  29 C.F.R. § 1601.7(a). And 29 C.F.R. § 1601.22 states that the confidentiality provision "does not apply to such earlier disclosures to charging parties, or their attorneys, respondents or their attorneys, or witnesses where disclosure is deemed necessary for securing appropriate relief." (Emphasis added.)  Together, these regulations support the Debtors' argument that filing a confidential proof of claim does not violate the EEOC's confidentiality rules regarding charges.

17

(Compare Br. at 21, with Pioneer, 507 U.S. at 395 (weighing the "danger of prejudice to the debtor").)

Allowing the EEOC to file the ADA Claim may inspire many other similarly situated parties to file late claims and thus would unfairly impede the Debtors' ability to emerge from chapter 11. Courts have often looked primarily to concerns about opening the floodgates to similar late-filed claims as a reason not to allow late claims. See, e.g., In re Enron Corp., 419 F. 3d 115, 132 (2d Cir. 2005); In re Kmart Corp., 381 F.3d 709, 714 (7th Cir. 2004) (noting that if court allowed all similar late-filed claims, "Kmart could easily find itself faced with a mountain of such claims"); In re Enron Creditors Recovery Corp., 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) ("It can be presumed in a case of this size with tens of thousands of filed claims, there are other similarly-situated potential claimants. . . . Any deluge of motions seeking similar relief would prejudice the Debtors' reorganization process." (citation omitted)); In re Dana Corp., 2007 WL 1577763, *6 (Bankr. S.D.N.Y. 2007) ("the floodgates argument is a viable one").

The Government argues that certain "generic" considerations, presumably considerations such as (i) the integrity of the Bar Date Order, (ii) the concern for the EPCA Target, and (iii) the floodgates argument, rest on "no evidence at all." (Br. at 14.) Quite the opposite. Each of these considerations is supported either with admissible evidence or controlling case law.[13] The Bankruptcy Court weighed the equities when it held that the

---

[13]     On the importance of the Bar Date, see In re Calpine Corp., Nos. 05-60200 (BRL), 07 Civ. 8493 (JGK), 2007 WL 4326738, at *6-7 (S.D.N.Y. Nov. 21, 2007) (finding that a delay of more than six months in filing claims after bar date not result of excusable neglect and noting that claimants "had the ability to . . . file supplemental Proofs of Claim at any time and have not offered any explanation as to why no such supplements were filed until such a late date."). On the concern for the EPCA Target, see generally the

*(cont'd)*

18

Government had failed to establish excusable neglect.  The Bankruptcy Court noted that the prejudice in granting the Motion would be three-fold: (i) the concerns related to liquidating the claim in time to preclude default under EPCA, (ii) the effect that liquidating such a claim would have on reaching the claims cap under EPCA[14], and (iii) the general prejudice that results from "opening the door by granting a motion on this shaky foundation."  (R 804-05.)

    1.      Prejudice To The Debtors Still Exists And There Is No Justification For Remanding The Case To The Bankruptcy Court

Finally, the Government incorrectly asserts that the fact that the Plan Investors purported to terminate the EPCA is grounds for a remand.  The Debtors have made enormous strides in administering over $37 billion in claims filed against the estates.  Certainty as to the general unsecured claims pool is critical to the formulation and consummation of any plan of reorganization.  If the Government is allowed to file a late proof of claim, the integrity of the Bar Date Order will be undermined and will no doubt make the Debtors' attempt to successfully reorganize more difficult.  Simply put, any adverse developments in Delphi's chapter 11 cases following entry of the Bankruptcy Court's order do not enhance the Government's ability to demonstrate excusable neglect.

A remand on the issue of the EPCA termination would not change the Bankruptcy Court's decision because the litigation may be disposed of on other grounds, therefore remand is

---

*(cont'd from previous page)*

    Unrue Declaration.  (R 631-32.)  For the viability of the "floodgates" argument, see, e.g., In re Enron Creditors Recovery Corp., 370 B.R. 90, 102-03 (Bankr. S.D.N.Y. 2007).

[14]    The Government's argument that the decision below "relied on inadmissible evidence" to understand the potential magnitude of the EEOC's "unliquidated" claim misses the mark. (Br. at 14, 16.)  As the Government notes, the January E-mail was admitted by the Bankruptcy Court as "marginally relevant" and a "peripheral point to being with" to negate a contention of undue delay, a use expressly permitted under Fed. R. Evid. 408. (R 731, 749.)  The January E-mail was admissible, and even if the e-mail was admitted in error, the error is harmless.

not necessary.  See cert. denied, Argento v. Lenard, 464 U.S. 815 (1983).  The Government's

failure to comply with court orders and procedures should not obscure the "normal orderly and

efficient administration of justice," meaning that "priority consideration should be given to issues

which will dispose of the litigation over issues which, if sustained, will require remand and

retrial."  Id. (citing Otten v. Stonewall Insurance Co., 538 F.2d 210, 213 (8th Cir. 1976)).

As discussed above, the concern for the EPCA Target was one of several

independent reasons the Debtors would be prejudiced if the ADA Claim was allowed.  First, the

amount of allowed general unsecured claims is a critical component to any potential plan

investor.  Second, the concern that similarly situated potential claimants would file late claims,

by itself, is sufficiently prejudicial to the Debtors to support the decision below.  In re Dana

Corp., No. 06-10354 (BRL), 2007 WL 1577763, at *6 (Bankr. S.D.N.Y. May 30, 2007) ("the

floodgates argument is a viable one").  And third, the Bankruptcy Court cited case law noting

that creditors are prejudiced because "allowing a late claim to be filed that might materially alter

the distribution to creditors who relied on their projected distribution when voting to accept or

reject the plan."  (R 785.)  Therefore a remand to reconsider the Bankruptcy Court's findings on

prejudice is not warranted.[15]

---

[15]    The Government's only legal support for a remand based on changed circumstances is an
inapposite case where the Second Circuit remanded because a definite ruling "would
come perilously close to an advisory opinion."  New England Merchants Nat'l Bank v.
Iran Power Generation & Transmission Co., 646 F.2d 779, 873 (2d Cir. 1981).  Because
the controversy before the court suffered from a "lack of concreteness, together with the
novelty and delicacy of the issues," the case was remanded.  Id.  This case, by contrast,
does not present a situation where a ruling affirming the Bankruptcy Court would
constitute an advisory opinion.

<u>CONCLUSION</u>

For all of the reasons set forth above, the Government fails to establish excusable neglect and the ADA Claim should remain disallowed and expunged.  The Bankruptcy Court's ruling is legally and factually supported by the record in this case and therefore should be affirmed.

Dated:    New York, New York
          August 25, 2008

                              SKADDEN, ARPS, SLATE, MEAGHER
                                 & FLOM LLP

                              By:   /s/ Albert L. Hogan, III
                                  John Wm. Butler, Jr.
                                  John K. Lyons
                                  Albert L. Hogan, III
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois 60606

                                  - and -

                              By:   /s/ Kayalyn A, Marafioti
                                  Kayalyn A. Marafioti
                                  Thomas J. Matz
                              Four Times Square
                              New York, New York 10036

                              Attorneys for Delphi Corporation, <u>et al.</u>,
                                 Debtors and Debtors-in-Possession

21